817 A.2d 331 (2003)
358 N.J. Super. 96
STATE of New Jersey, Plaintiff-Respondent,
v.
Steven BRANNON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 2003.
Decided March 3, 2003.
*332 Yvonne Smith Segars, Public Defender, attorney for appellant (Susan Brody, Assistant Deputy Public Defender, on the brief).
Daniel G. Giaquinto, Mercer County Prosecutor, attorney for respondent (Elizabeth H. Stearns, Assistant Prosecutor, of counsel and on the brief).
Before Judges KING, LISA and FUENTES.
The opinion of the court was delivered by FUENTES, J.A.D.
Defendant Steven Brannon was convicted, after a jury trial, of third degree resisting arrest, N.J.S.A. 2C:29-2a(3)(a), by using or threatening to use physical force or violence, fourth degree resisting arrest, N.J.S.A. 2C:29-2a(2), by flight, and fourth degree possession of a weapon under circumstances not manifestly appropriate for such lawful uses as it may have, N.J.S.A. 2C:39-5d. He was also convicted, in a bifurcated trial,[1] of the fourth degree offense of certain persons not to have a weapon, N.J.S.A. 2C:39-7a. The jury acquitted defendant of two counts of third degree aggravated assault upon a law enforcement officer, N.J.S.A. 2C:12-1b(5)(a), and third degree possession of a weapon, a knife, with the purpose to use it unlawfully, N.J.S.A. 2C:39-4d.
The court granted the State's motion for the imposition of a discretionary extended term of imprisonment on the third degree offense of resisting arrest, merged the fourth degree resisting arrest conviction and sentenced defendant to a term of eight years with a four year period of parole ineligibility. The court also merged the fourth degree unlawful possession of a weapon charge with the certain persons offense and imposed an eighteen month term to run concurrent with the extended term and levied the mandatory fines and penalties.
On appeal, defendant raises the following issues:
POINT I
BECAUSE THE COURT PROVIDED THE JURY WITH AN ERRONEOUS DEFINITION OF THE TERM "PHYSICAL FORCE OR VIOLENCE," DEFENDANT'S CONVICTION FOR THIRD-DEGREE RESISTING ARREST MUST BE VACATED AND THE MATTER REMANDED FOR A NEW TRIAL ON THAT CHARGE.
POINT II
THE SENTENCE OF EIGHT YEARS WITH A FOUR-YEAR PAROLE BAR WAS MANIFESTLY EXCESSIVE. THE MATTER MUST BE REMANDED FOR RESENTENCING TO A TERM NOT TO EXCEED SIX YEARS.
We agree that the trial court's definition of "physical force or violence," as an element of third degree resisting arrest, was erroneous. In the context of the evidence presented, we hold that this constituted reversible error.

*333 I
The details of the initial interaction between defendant and police are not in dispute. On July 8, 2000 at approximately 8 p.m., while on patrol in the area of Hermitage Avenue and Bellevue Avenue in Trenton, police officers Stephen Varn and Steven Wilson observed an individual, later identified as defendant, sitting on his bicycle drinking beer. Because public consumption of alcohol is a violation of a municipal ordinance, the officers turned their unmarked police car around to issue defendant a summons. As the uniformed police officers approached defendant on foot, he discarded the beer bottle and attempted to leave the area on his bicycle. Defendant was also carrying a backpack. The officers immediately gave chase. Defendant fell to the ground but, in an effort to evade apprehension, attempted to run using the bicycle as a barrier between himself and Officer Varn. At this point the stories diverge.
According to defendant, who testified in his own behalf, he was nervous, tired and unable to run very far because he had been "drinking beer [and] smoking crack earlier that day." As he turned around, Varn ran past him, blocked his path and screamed for him to put his hands behind his back. As he asked Varn why he was being arrested, he was struck from behind and knocked to the ground by Officer Wilson. While on the ground, the two officers physically subdued and handcuffed him. He was then taken back to where the bicycle was lying and forced to kneel while the police searched his backpack. No contraband or weapons were found.
Thereafter, he was taken to the police vehicle and ordered to lay on the ground, face down. Again, according to defendant, when he protested, he was maced for no apparent reason. When the police asked if he had any weapons or sharp objects on his person, he responded by telling them exactly where all of the items were located. The police recovered a folding knife, a railroad spike, crack pipes, baggies and $230.50 in cash.
The testimony of the two arresting officers provided the jury with an altogether different account of the event. Officer Wilson described a violent confrontation with defendant which placed him and his partner in clear and substantial danger of physical harm. According to Wilson, defendant ran directly toward him, striking him in the chest and tearing his badge and nameplate from his uniform. When Varn came to assist him in handcuffing defendant, all three men fell to the ground. Defendant continued to struggle, punching and kicking the officers in an attempt to get away.
When the officers managed to place one handcuff on defendant, the struggle intensified, requiring Wilson to spray defendant with pepper spray three separate times. This appeared to have no effect. At this point, defendant reached into his pocket, while continuing to struggle with Wilson, and pulled out a closed pocket knife. Wilson grabbed defendant's wrist to prevent him from opening the knife. Defendant eventually dropped the knife as a result of Wilson slamming his hand against the ground. Varn immediately kicked the weapon out of defendant's reach. The officers flipped defendant on his stomach, face down to the ground, but defendant succeeded in turning around and resumed throwing punches and kicking. Wilson struck defendant in the nose, which seemed to momentarily stun him. Seizing the opportunity, Wilson placed the second handcuff on defendant.
The altercation took approximately fifteen to twenty minutes. A search of defendant incident to his arrest revealed, in addition to the folding knife, plastic zip-lock *334 lock bags, three glass "crack pipes," found in his front pants pocket, and a railroad spike wrapped in a rubber tubing and fashioned to "look like a club," hidden in his sock.

II
As part of his overall charge, the trial judge instructed the jury on the elements of third degree resisting arrest utilizing the model charge. In the course of its deliberation, the jury sent a note requesting the court to define the terms "physical force or violence." In response, the trial judge gave the jury the following supplemental charge:
[F]orce means an amount of physical power or strength used against a victim[.] That force need not entail pain or bodily harm and not [sic] need leave any marks.
We are not talking the concept we talk [sic] about in the aggravated assault charges. We're talking about the use of power or strength against an individual. There would be force, violence would be unjust or unwarranted use of force under the circumstances and it could be force or violence. It's in the disjunctive as I indicated; and further, if it is a matter of using or threatening to use physical force, that's all part of the verdict sheet that you have, you can refer very specifically to those words. Obviously words are very important.
Defense counsel specifically objected to this supplemental charge.
DEFENSE COUNSEL:
I wanted to put on the record that I think the dictionary Blackstone's [sic] definition for force would have been [a] more appropriate definition for this charge of resisting arrest for the questions the jury asked. That definition was power, violence, pressure directed against a person or thing. I think there was a secondary definition of an act, especially a violent act directed at a victim.
Then for the word violence, the Court had also looked up the Blackstone's [sic] dictionary and found following: Unjust or unwarranted use of force, and then there is a secondary definition of it: Physical force unlawfully exercised with intent to harm.
THE COURT:
I'm not giving that.
DEFENSE COUNSEL:
I wanted to note I think that the one you did use comes from the robbery statute and the comments of the robbery statute perhaps and I think that's a much lower threshold for level of force because it's specifically designed to cover such things as blindside [sic] muggings, that was the annotation there was referenced to a case State versus Battle.
THE COURT:
I think you're absolutely wrong but I'll not recharge this.

III
Our Supreme Court has consistently emphasized the need for trial courts to give clear and correct jury instructions. State v. Savage, 172 N.J. 374, 387, 799 A.2d 477 (2002); State v. Koskovich, 168 N.J. 448, 507, 776 A.2d 144 (2001); State v. Brown, 138 N.J. 481, 522, 651 A.2d 19 (1994), overruled on other grounds by State v. Cooper, 151 N.J. 326, 700 A.2d 306 (1996); State v. Martini, 131 N.J. 176, 271, 619 A.2d 1208 (1993); cert. denied, 516 U.S. 875, 116 S.Ct. 203, 133 L.Ed.2d 137 (1995); State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988); State v. Green, 86 N.J. 281, 287, 430 A.2d 914 (1981). Each element of an offense must be properly defined. State v. Wallace, 158 N.J. *335 552, 558, 730 A.2d 839 (1999). Furthermore, the Model Jury Charges are only guidelines. A trial judge has a non-delegable duty to modify the Model Charge when necessary so that it conforms with the facts and circumstances of the case being tried. State v. Concepcion, 111 N.J. at 379, 545 A.2d 119; State v. Green, 318 N.J.Super. 361, 376, 724 A.2d 254 (App. Div.1999), aff'd, 163 N.J. 140, 747 A.2d 1234 (2000).
Here, the jury's question focused on the definition of the term "physical force or violence" used by defendant to purposely prevent or attempt to prevent Officer Varn from effecting defendant's arrest. The New Jersey Code Criminal Justice (Code) defines the offense of resisting arrest as follows:
(1) Except as provided in paragraph (3), a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. (2) Except as provided in paragraph (3), a person is guilty of a crime of the fourth degree if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. (3) An offense under paragraph (1) or (2) of subsection a. is a crime of the third degree if the person: (a) Uses or threatens to use physical force or violence against the law enforcement officer or another; or (b) Uses any other means to create a substantial risk of causing physical injury to the public servant or another. It is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance.

[N.J.S.A. 2C:29-2a]
The Legislature did not define the terms "physical force or violence." On their face, these words are susceptible to different interpretations. Thus: "... we [will] look beyond the literal words of the statute and consider `extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the Legislature's intent.'" State v. Livingston, 172 N.J. 209, 217, 797 A.2d 153 (2002). (Citations omitted). "However, in criminal cases, we are guided by the rule of lenity, which requires us to construe penal statutes strictly and interpret ambiguous language in favor of a criminal defendant." Ibid.
The Legislature amended N.J.S.A. 2C:29-2a effective April 28, 2000, elevating the crime of resisting arrest by using or threatening the use of physical force or violence from a fourth degree to a third degree offense.[2] The specific wording at issue here is based on § 242.2 of the Model Penal Code. In the commentary contained in the Final Report recommending adoption of our modern Code of Criminal Justice, the New Jersey Criminal Law Revision Commission noted that:
Resistance to arrest is one of the most common forms of obstructing the execution of the laws. We deal with it specifically rather than leave it to the general terms of Section 2C:29-1, because we wish to grade the offense depending upon the presence of forcible resistance that involves some substantial danger to the person.
[Final Report of the New Jersey Criminal Law Revision Commission, The New Jersey Penal Code, Volume II, comment 1 on § 2C:29-2 (1971).]
*336 The driving principle of the statute is to link the seriousness of the offense to the substantial risk of danger forcible resistance poses to the law enforcement officer and others.
An offense under paragraph (1) or (2) of subsection a. is a crime of the third degree if the person: (a) Uses or threatens to use physical force or violence against the law enforcement officer or another; or (b) Uses any other means to create a substantial risk of causing physical injury to the public servant or another. (Emphasis added.)

[N.J.S.A. 2C:29-2a]
The phrase "any other means" used in sub-section (b) is indicative of the legislative intent to define "physical force or violence" as instances where the "means" employed to resist the arrest inherently involved a substantial risk of physical injury to either the arresting officer or another. In State v. Wallace, supra, 158 N.J. at 558, 730 A.2d 839, the Court defined "injury," in the context of second degree eluding, N.J.S.A. 2C:29-2b to be equivalent to "bodily injury," as defined in N.J.S.A. 2C:11-1a. We see no rational basis to limit this aspect of the holding in Wallace to only second degree eluding. Both resisting arrest and eluding reflect the same legislative concern for the safety of law enforcement personnel and the general public. Both crimes are also committed against the criminal justice system, not against the law enforcement officer individually. See State v. Parsons, 270 N.J.Super. 213, 222, 636 A.2d 1077 (App. Div.1994). Finally, both resisting arrest and eluding have their respective counterpart offenses of aggravated assault, specifically listing the police officer as the victim of the crime. Cf. N.J.S.A. 2C:12-1b(5) and N.J.S.A. 2C:12-1b(6). Consequently, these offenses do not merge at the time of sentencing with offenses under N.J.S.A. 2C:29-2. We therefore hold that "physical injury," in the context of third degree resisting arrest, means bodily injury as defined in N.J.S.A. 2C:11-1a.
Thus, in a case in which a defendant is charged with third degree resisting arrest, a jury must be instructed that using or threatening to use "physical force or violence" means conduct which creates or threatens to create a substantial risk of causing physical injury to the public servant or another. "Physical injury" means bodily injury as defined in N.J.S.A. 2C:11-1a.[3]

IV
The judge's supplemental instruction to the jury did not include the element of "conduct creating or threatening to create substantial risk of physical injury," thereby improperly relieving the State of its burden to prove, beyond a reasonable doubt, this element of the offense of third degree resisting arrest. Furthermore, by defining "physical force" as "an amount of physical power or strength used against a victim [which need not] entail pain or bodily harm [nor] leave any marks," the jury could have convicted defendant based on patently de minimis conduct, e.g., pulling his arm away in an effort to avoid being handcuffed. A similar outcome is also possible with the definition of "violence" as an "unjust or unwarranted use of force under the circumstances."
In this case, the jury was confronted with conflicting accounts of the encounter *337 between defendant and the police. Defendant testified to passively submitting to unprovoked and unwarranted violence at the hands of the police. The arresting officer detailed a harrowing and violent altercation in which defendant was, at all times, the implacable aggressor.
From the conflicting testimony, the jury could have found that defendant did use some force in his physical struggle with the police, but not necessarily of such a quality or magnitude that it created a substantial risk of causing physical injury to one or both of the officers. Such a finding would not properly support a conviction of third degree resisting arrest. However, under the supplemental charge given, the jury may have found such force adequate to convict. The State must prove this element beyond a reasonable doubt. The erroneous charge given may have led the jury to a result it might otherwise not have reached, and was thus clearly capable of producing an unjust result. R. 2:10-2; State v. Macon, 57 N.J. 325, 337-38, 273 A.2d 1 (1971). The error is therefore harmful and requires reversal.
In criminal cases, erroneous jury instructions are presumed to be reversible error, and are thus poor candidates for rehabilitation under the concept of harmless error. State v. Diaz, 144 N.J. 628, 641, 677 A.2d 1120 (1996); State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979); State v. Clausell, 121 N.J. 298, 317, 580 A.2d 221 (1990); State v. Olivera, 344 N.J.Super. 583, 590, 782 A.2d 988 (App. Div.2001); State v. Worthy, 329 N.J.Super. 109, 116, 746 A.2d 1063 (2000).
Our conclusion that the erroneous instruction cannot be disregarded as harmless is bolstered by the jury's acquittal on the two aggravated assault counts, thus finding that defendant did not cause or attempt to cause bodily injury to either officer. While this is not dispositive of the third degree charge, it supports our conclusion that the error was harmful.
We reverse defendant's conviction of third degree resisting arrest and remand the matter for a new trial on that count. In all other respects, defendant's judgment of conviction remains in effect. In light of our disposition, we do not address defendant's sentencing argument. In the event the State chooses to forgo retrial on the third degree resisting arrest count, it may request the trial court to "unmerge" and reinstate defendant's conviction of fourth degree resisting arrest by flight and sentence defendant on that count. State v. Pennington, 273 N.J.Super. 289, 295, 641 A.2d 1085 (App.Div.), certif. denied, 137 N.J. 313, 645 A.2d 141 (1994).
Reversed and remanded only with respect to third degree resisting arrest.
NOTES
[1] See State v. Ragland, 105 N.J. 189, 193, 519 A.2d 1361 (1986).
[2] L. 2000, c. 18 § 2
[3] We believe the Model Jury Charge for N.J.S.A. 2C:29-2a, third degree resisting arrest, should be modified to add this definition of physical force or violence. Accordingly, we refer this concern to the Committee on Model Jury Charges, Criminal, for further consideration.