842 A.2d 148

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. STEVEN BRANNON, DEFENDANT–RESPONDENT.

Argued January 21, 2004—Decided March 3, 2004.

*Robert E. Bonpietro,* Deputy Attorney General, argued the cause for appellant (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

*Susan Brody,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

This criminal appeal requires us to examine the requirement in *N.J.S.A.* 2C:29–2a(3)(a) that "physical force or violence" be used or threatened against a police officer or another in order to convict for third-degree resisting arrest. Defendant Steven Brannon claims that the use or threatened use of physical force or violence must create or threaten to create a substantial risk of causing physical injury. Because the jury instruction given here did not contain such a direction, defendant contends his conviction must

be reversed. The Appellate Division agreed. *State v. Brannon,* 358 *N.J.Super.* 96, 106, 817 *A.*2d 331 (2003). We granted certification, 177 *N.J.* 224, 827 *A.*2d 291 (2003), and now reverse and reinstate defendant's conviction.

## I.

The evidence necessary to our disposition may be summarized briefly. Two Trenton Police Officers, Varn and Wilson, were on patrol in an unmarked vehicle when they observed defendant sitting on a bicycle and drinking beer in public. The officers turned their vehicle in defendant's direction to issue him a summons. After exiting the vehicle, Varn ordered defendant to show his hands. Defendant reacted by discarding the beer bottle and attempting to cycle away. When he fell off the bicycle, defendant began to flee on foot. Varn took up the chase and Wilson called for backup.

Regarding what happened next, the record contains differing accounts of the events. According to defendant, he shortly became fatigued and ceased running due to the alcohol and crack cocaine he had consumed earlier. Varn ordered him to stop and to place his hands on his head. When defendant asked why he was being arrested, he was struck by Wilson and knocked to the ground. The officers handcuffed him and brought him back to his bicycle. While at the bicycle, defendant was forced to kneel as the officers searched his backpack. The officers then brought defendant to their vehicle where they made him lie facedown on the ground. When defendant asked permission to kneel instead, Wilson put his foot on defendant's back. Wilson asked defendant repeatedly where the drugs were, striking him when he responded that he did not have any drugs. As defendant cried out, he was sprayed with mace. Defendant maintains that notwithstanding all that, he cooperated with the officers, including disclosing the location of certain items when he was asked whether he had anything sharp or illegal in his pockets.

The officers' versions differ from defendant's in significant respects. They testified that after falling off his bicycle, defendant used the bicycle to shield himself from Varn. Defendant then ran directly at Wilson, struck him, and ripped the badge and nameplate from the officer's shirt. Wilson wrestled defendant to the ground, and Varn approached to assist. The struggle intensified as Wilson attempted to handcuff defendant. Varn managed to place one handcuff on defendant, at which time defendant began to punch and kick the officers in an effort to escape. The officers sprayed mace on defendant three times to no avail. Defendant then pulled out a closed pocketknife. Wilson dislodged the knife from defendant's hand by slamming his wrist to the ground, and Varn kicked the knife out of reach. The officers wrestled defendant face down to the ground, but defendant reversed his position and continued to punch and kick them. Only when Wilson finally punched defendant in the face, momentarily stunning him, were the officers able to complete the handcuffing.

A search incident to arrest revealed the pocketknife, a railroad spike hidden in defendant's sock, plastic baggies, three crack pipes, and $230.50 in cash. Defendant was taken to a local hospital where he received two stitches for a laceration over his right eye. Varn suffered only a scrape on his left forearm. Wilson sustained no injuries. Mercer County Indictment Number 00–09–0963 charged defendant with: aggravated assault against two police officers contrary to *N.J.S.A.* 2C:12–1b(5)(a) (Counts One and Two); third-degree resisting arrest contrary to *N.J.S.A.* 2C:29–2a(3)(a) (Count Three); possession of a weapon for an unlawful purpose contrary to *N.J.S.A.* 2C:39–4d (Count Four); possession of a weapon under circumstances not manifestly appropriate contrary to *N.J.S.A.* 2C:39–5d (Count Five); and certain persons not to have weapons contrary to *N.J.S.A.* 2C:39–7a (Count Six).

Bifurcated proceedings were conducted.[1] In its instruction to the jury in the first proceeding, the trial court gave essentially the

[1] The trial court held a separate proceeding on Count Six.

model charge on each of the three grading levels of resisting arrest, appropriately molded to the facts of this matter. The charge did not define specifically the term "physical force or violence." During deliberations, the jury requested definitions for "flight," which is required under *N.J.S.A.* 2C:29–2a(2), and for "physical force or violence." The trial court gave an expanded charge on flight, instructing that running from the police was not force or violence. The trial court then defined "physical force or violence" as follows:

> The best I can do for you with regard to this is, number one, distinguish force or violence from an act of running; secondly, to charge you that force means an amount of physical power or strength used against a victim. . . . That force need not entail pain or bodily harm and not need [sic] leave any marks.
>
> We are not talking the concept we talk [sic] about in the aggravated assault charge. We're talking about the use of power or strength against an individual. There would be force, violence would be unjust or unwarranted use of force under the circumstances and it could be force or violence. It's in the disjunctive as I indicated; and further, if it is a matter of using or threatening to use physical force, that's all part of the verdict sheet that you have, you can refer very specifically to those words. Obviously words are very important.

Defense counsel objected to the trial court's definition, and the following exchange ensued:

> DEFENSE COUNSEL:
>
> I wanted to put on the record that I think the dictionary Blackstone's [sic] definition for force would have been [a] more appropriate definition for this charge of resisting arrest for the questions the jury asked. That definition was power, violence, pressure directed against a person or things. I think there was a secondary definition of an act, especially a violent act directed at a victim. Then for the word violence, the Court had also looked up the Blackstone's [sic] dictionary and found the following: Unjust or unwarranted use of force, and then there is a secondary definition of it: Physical force unlawfully exercised with intent to harm?
>
> THE COURT:
>
> I'm not giving that.
>
> DEFENSE COUNSEL:
>
> I wanted to note I think that the one you did use comes from the robbery statute and the comments of the robbery statute perhaps and I think that's a much lower threshold for level of force because it's specifically designed to cover such things as blindside [sic] muggings, that was the annotation there was referenced to a case State versus Battle.
>
> THE COURT:
>
> I think you're absolutely wrong but I'll not recharge this.

The jury convicted defendant of third- and fourth-degree resist-
ing arrest, unlawful possession of a weapon, and, in the bifurcated
proceeding, possession by a person statutorily barred from having
a weapon. Defendant was acquitted on the remaining charges.
The trial court denied defendant's motion for a new trial. On the
State's motion pursuant to *N.J.S.A.* 2C:44-3, the trial court sen-
tenced defendant on the third-degree resisting arrest conviction as
a persistent offender, imposing a discretionary eight-year extend-
ed term. The third- and fourth-degree resisting arrest convictions
were merged. The court also merged defendant's convictions for
fourth-degree unlawful possession of a weapon and certain persons
not to have weapons, imposing an eighteen-month concurrent
sentence.

The Appellate Division "[r]eversed and remanded only with
respect to third degree resisting arrest." *Brannon, supra,* 358
*N.J.Super.* at 106, 817 *A.*2d 331. The panel determined that the
trial court's supplemental charge failed to capture "[t]he driving
principle of the statute[, which] is to link the seriousness of the
offense to the substantial risk of danger forcible resistance poses
to the law enforcement officer and others." *Id.* at 103, 817 *A.*2d
331. In reaching its conclusion the court relied on a comment by
the drafters of *N.J.S.A.* 2C:29-2 and the "rule of lenity," which
requires courts to construe ambiguities in criminal statutes in
favor of the defendant. *Ibid.* Thus, the court held that trial
courts must instruct juries in all prosecutions under *N.J.S.A.*
2C:29-2a(3)(a) that the use or threatened use of "physical force or
violence," must "create[ ] or threaten[ ] to create[ ] a substantial
risk of causing physical injury...." *Id.* at 104, 817 *A.*2d 331.
Because the trial court failed to so charge the jury, and in light of
the importance of accurate jury instructions in criminal cases, the
Appellate Division found reversible error in the proceedings be-
low. *Id.* at 105-06, 817 *A.*2d 331.

## II.

When construing a statute, our goal is to discern and
effectuate the Legislature's intent. The starting point for that

inquiry is the language of the statute itself. When a " 'statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent.' " *State v. Thomas*, 166 *N.J.* 560, 567, 767 *A.*2d 459 (2001) (quoting *State v. Butler*, 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982)). Courts should "read and examine the text of the act and draw inferences concerning the meaning from its composition and structure." 2A Norman J. Singer, *Sutherland Statutory Construction* § 47:01 (6th ed.2000), *cited in In re Liquidation of Sussex Mut. Ins. Co.*, 301 *N.J.Super.* 595, 602, 694 *A.*2d 312 (App.Div.1997).

The offense of resisting arrest is set forth in *N.J.S.A.* 2C:29–2a, which provides, in relevant part:

a. (1) Except as provided in paragraph (3), a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. (2) Except as provided in paragraph (3), a person is guilty of a crime of the fourth degree if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest. (3) An offense under paragraph (1) or (2) of subsection a. is a crime of the third degree if the person:

(a) Uses or threatens to use physical force or violence against the law enforcement officer or another; or

(b) Uses any other means to create a substantial risk of causing physical injury to the public servant or another.

[*N.J.S.A.* 2C:29–2a.]

Notably, the statute does not define the term "physical force or violence." *N.J.S.A.* 2C:29–2a(3)(a).

### III.

### A.

■ The matter before us focuses squarely on what kinds of affirmative acts can upgrade resisting arrest to a third-degree crime. *N.J.S.A.* 2C:29–2a(3)(b), which is separated from *N.J.S.A.* 2C:29–2a(3)(a) by the disjunctive "or," requires "a substantial risk of causing physical injury." *N.J.S.A.* 2C:29–2a(3)(b). The use or threatened use of physical force or violence necessary to convict under *N.J.S.A.* 2C:29–2a(3)(a) does not include any requirement

that a defendant "create a substantial risk of causing physical injury." Had the Legislature intended the latter to be a requirement for all convictions under *N.J.S.A.* 2C:29–2a(3), it could have done so expressly by not subdividing *N.J.S.A.* 2C:29–2a(3) into subparts (a) and (b) and placing the requirement to "create a substantial risk of causing physical injury" in subpart (b) only. From a plain-language assessment, we cannot ignore the Legislature's choice of language and context in drafting, and the concomitant meaning thereby conveyed.

Moreover, the Legislature's use of the modifier "physical" in *N.J.S.A.* 2C:29–2a(3)(a) implies a type of "force" or "violence," namely one that is perceptible to the senses. Because even minimal force or violence can be "physical," such conduct appears to fall reasonably within the ambit of *N.J.S.A.* 2C:29–2a(3)(a). Other conduct that "create[s] a substantial risk of causing physical injury" is addressed by *N.J.S.A.* 2C:29–2a(3)(b). Had the Legislature intended to require a certain minimum amount of force or violence to convict under *N.J.S.A.* 2C:29–2a(3)(a), it could have used a quantitative, rather than qualitative, modifier for "force or violence." It appears from a plain-language assessment that the better interpretation of *N.J.S.A.* 2C:29–2a(3)(a) is that the force or violence necessary to convict need not include a substantial risk of causing physical injury to the public servant or another.

B.

 To the extent that a statute is not so clear as to preclude all but one reasonable conclusion, we may look to extrinsic sources " 'such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent.' " *Thomas, supra,* 166 *N.J.* at 567, 767 *A.*2d 459 (citations and internal quotation marks omitted). Here the legislative history of *N.J.S.A.* 2C:29–2 bolsters our textual conclusion.

The Historical and Statutory Notes accompanying *N.J.S.A.* 2C:29–2 list as its source section 242.2 of the *Model Penal Code* (*MPC* ). Under *MPC* § 242.2, "a person commits a misdemeanor

if, for the purpose of preventing a lawful arrest ... the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." The drafters of *N.J.S.A.* 2C:29–2, the New Jersey Criminal Law Revision Commission (Commission), stated an intention to grade the offense of resisting arrest depending on "the presence of forcible resistance that involves some substantial danger to the person." II *The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission,* cmt. 1 on § 2C:29²-2 at 282 (1971) (*Final Report* ). The Appellate Division concluded from that statement that the statute is directed at instances in which forcible resistance creates a substantial risk of danger to law enforcement officers and others. *Brannon, supra,* 358 *N.J.Super.* at 103, 817 *A.*2d 331. However, a second portion of the Commission's commentary explains that *N.J.S.A.* 2C:29–2 expands on the *MPC* offense by "rejecting the *MPC* view that mere non-submission should not be an offense, believing an affirmative policy of submission to be appropriate as now seems to be our law." *Final Report, supra,* cmt. 1 on § 2C:29–2 at 282 (citing *State v. Mulvihill,* 57 *N.J.* 151, 270 *A.*2d 277 (1970); *State v. Washington,* 57 *N.J.* 160, 270 *A.*2d 282 (1970); *State v. Koonce,* 89 *N.J.Super.* 169, 214 *A.*2d 428 (App.Div.1965)). Thus, whereas the second clause of *MPC* § 242.2 analyzes both the defendant's "means" and the justified or required responses by the public servant, *N.J.S.A.* 2C:29–2a(3)(a) focuses solely on the defendant's conduct.

The two statements from the Commission's *Final Report* roughly encapsulate the two subparts of *N.J.S.A.* 2C:29–2a(3). The first statement expresses the Commission's intent to criminalize essentially the same conduct as that made a misdemeanor by the first clause of *MPC* § 242.2. That conduct is made an offence under our Code by *N.J.S.A.* 2C:29–2a(3)(b). The Commission's second statement, which embraces an intention to maintain "an affirmative policy of submission," echoes Judge Conford's warning in *Koonce, supra,* that "[f]orce begets force, and escalation into bloodshed is a frequent probability." 89 *N.J.Super.* at 183, 214

*A.2d* 428. That policy reveals itself in *N.J.S.A.* 2C:29–2a(3)(a). That subsection sets forth both a positive and normative declaration of New Jersey law that proscribes the use of any physical force or violence to resist arrest. The Commission's approving reference to our State's "affirmative policy of submission," *Final Report, supra*, cmt. 1 on § 2C:29–2 at 282, supports the conclusion that even minimal force or violence would contravene *N.J.S.A.* 2C:29–2a(3)(a).

In sum, the text of *N.J.S.A.* 2C:29–2a(3)(a) parts ways with the *MPC.* The Commission's commentary demonstrates that the deviation was deliberate. The legislative history of *N.J.S.A.* 2C:29–2 reinforces the conclusion derived from our textual analysis. Conviction under *N.J.S.A.* 2C:29–2a(3)(a) does not require the actor to create a "substantial risk of causing physical injury" to anyone. Instead, that provision scrutinizes the defendant's conduct with a view toward preventing the transformation of arrests into melees and tragedy. Viewed in its totality, the text, composition, and structure of *N.J.S.A.* 2C:29–2 reveal an overall legislative purpose to avoid physical confrontations between arrestees, police officers, and the public. We discern no legislative intent to require the State to prove a defendant's conduct created a substantial risk of causing physical injury in all prosecutions under *N.J.S.A.* 2C:29–2a(3). Neither the text nor legislative history supports such a conclusion.[2]

---

[2] Because there is no lack of clarity concerning the term "physical force or violence," we need not resort to the "rule of lenity." *Cf. N.J.S.A.* 2C:1–2c ("The provisions of the code shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved."). The "rule of lenity" may be pertinent if, after a court concludes its analysis of extrinsic sources, multiple interpretations remain feasible. However, if the "rule of lenity" intervened whenever the words of a criminal statute were deemed facially ambiguous, construing courts would never look to extrinsic evidence because the "rule of lenity" would always end the inquiry in the defendant's favor. One only proceeds to examine extrinsic evidence when more than one reasonable interpretation is possible. See *State v. Pena*, 178 *N.J.* 297, 308, 839 *A.2d* 870 (2004).

## C.

Because the text and history of *N.J.S.A.* 2C:29–2a(3)(a) do not indicate that the Legislature intended any specialized definitions for the words "physical force or violence," we give them their ordinary and common meaning. See *State v. S.R.*, 175 *N.J.* 23, 31, 811 *A.*2d 439 (2002). The word "force" commonly means the "exercise of strength or power." *Webster's Third New International Dictionary* 887 (1981). "Violence" is "dynamic power showing great strength, power, intensity, fury, [and] destructiveness." *Ibid.* Because the statute references the force or violence as "physical," it must "relat[e] to natural or material things as opposed to things mental, moral, spiritual, or imaginary." *Id.* at 1706. The trial court's supplemental instruction provided the essence of those definitions to the jury. Although the trial court's description of "force" may have originated from the model jury charge for robbery, its substance, not its pedigree, determines its legitimacy. The trial court communicated to the jury what we believe the Legislature intended by the phrase "physical force or violence" in *N.J.S.A.* 2C:29–2a(3)(a).

Finally, we reject defendant's contention that the grouping of the words "force" and "violence" together implies that "force," as the purportedly more general word, may be refined and limited by the word "violence," *State v. Hoffman,* 149 *N.J.* 564, 584, 695 *A.*2d 236 (1997), which is narrower in that it can connote an elevated level of force, or force exerted for the purpose of causing injury. Although some definitions of "violence" carry the connotation urged by defendant, certainly not all do, and absent a clear legislative intent to the contrary, we give "force" its ordinary and common meaning. Further, insofar as "violence" can be defined as force accompanied by "fury, vehemence or outrage," or an "intent to harm," *Black's Law Dictionary* 1564 (7th ed.1999), we are loath to render "force" redundant, as subsumed in the definition of "violence," or "violence" meaningless, as encompassed by the broader word "force." Again, absent a clear expression of a

different intention, we understand "force or violence" to mean just that—"force" *or* "violence."

## IV.

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for reinstatement of defendant's judgment of conviction for third-degree resisting arrest contrary to *N.J.S.A.* 2C:29–2a(3)(a).

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.