# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1017-22

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

LUCIA MANZANO,

    Defendant-Respondent.

_____

> Submitted November 9, 2023 – Decided November 29, 2023
>
> Before Judges Vernoia and Walcott-Henderson.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FO-18-0101-23.
>
> John P. McDonald, Somerset County Prosecutor, attorney for appellant (Ryan A. Quiñones, Assistant Prosecutor, of counsel and on the brief).
>
> DeFilippo & DeFilippo, LLC, attorneys for respondent (Angel M. DeFilippo, on the brief).

PER CURIAM

The State appeals from an order dismissing its prosecution of defendant Lucia Manzano on contempt and resisting arrest disorderly persons offenses based on a finding defendant's actions constituted de minimis infractions under N.J.S.A. 2C:2-11.  Having reviewed the parties' arguments, the record, and the applicable legal principles, we find the court abused its discretion by dismissing the prosecution and reverse.

I.

N.J.S.A. 2C:2-11 permits an assignment judge to dismiss a prosecution under certain specified circumstances.  In its consideration of a dismissal motion under N.J.S.A. 2C:2-11, a court must "assume[] that the conduct charged actually occurred[,]" accept as true the State's allegations, and view the facts in the light most favorable to the State.  State v. Zarrilli, 216 N.J. Super. 231, 236 (Law Div. 1987); see also State v. Evans, 340 N.J. Super. 244, 249 (App. Div. 2001).  We therefore rely on, and accept as true, the following facts gleaned from the State's allegations in the complaint-warrant filed against defendant, an affidavit of probable cause, and police reports provided to the motion court.

At 3:04 a.m. on July 2, 2022, a municipal court judge entered a temporary restraining order (TRO) against defendant under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on a claim defendant

2

committed the predicate act of assault by punching the individual (the plaintiff) who sought the TRO, and causing the plaintiff physical injury. The TRO barred defendant from returning to the scene of the violence—the plaintiff's residence he "shared" with defendant—and from having "any oral, written, personal, electronic, or other form of contact or communication with" the plaintiff. (Emphasis in original). The TRO permitted defendant to obtain personal belongings from the residence, but only with a police escort.

The TRO had been entered following defendant's arrest on charges arising out of the alleged domestic violence incident. The police served defendant with the TRO, and she was then released from the custody attendant to her arrest.

Within an hour of the issuance of the TRO, at 3:56 a.m., the plaintiff reported to the police defendant had violated the TRO during the short time following her release from custody by "calling him about seventeen times and texting him." The plaintiff also reported defendant was at the residence. Two officers went to the residence but did not locate defendant there. The plaintiff informed the officers "he was in fear of his life," and the officers searched the building complex where the residence was located but did not find defendant and left.

A-1017-22

Twenty minutes later, the plaintiff contacted police headquarters and advised that defendant was in the residence. The plaintiff advised he was "downstairs," and he could see defendant "on the balcony of" the residence. The officers returned to the residence but did not locate defendant.

As the officers left, they observed defendant's vehicle running "in the parking lot and [they] heard a female voice yelling." The officers approached the vehicle and observed defendant "sitting in the car."

One of the officers asked defendant to get out of car because she was under arrest for violating the TRO. In response, defendant "kept saying she was not going to exit the vehicle." After multiple requests to defendant to get out of the car, one of the officers removed her from the vehicle. As the officers then attempted to arrest defendant and put her in handcuffs, defendant resisted by "flailing her arms and not complying with" the officers' orders.

The officers were subsequently successful in their efforts to handcuff defendant, and they transported her to police headquarters where she was charged with the disorderly persons offenses of contempt, N.J.S.A. 2C:29-9(b)(2), and resisting arrest, N.J.S.A. 2C:29-2(a)(1).

In the complaint-warrant charging the offenses, the State alleged defendant committed the offense of contempt by communicating by phone and

4

via text message with the plaintiff in violation of the TRO. In an affidavit of probable cause supporting defendant's arrest, one of the officers stated "defendant was believed to have gone into" the plaintiff's residence in violation of the TRO.

The complaint-warrant further alleged defendant resisted arrest "by, refusing to obey the officer's orders to exit [her] vehicle [and] place her hands behind her back as directed," and by "flailing her body in an attempt to resist" the officer's efforts to place her in handcuffs. The affidavit of probable cause similarly asserted defendant had refused orders to exit her vehicle and "flail[ed] her body in an attempt to break the officer's physical contact [with her] during the arrest."

Defendant's Motion

Defendant moved to dismiss the charges as de minimis infractions under N.J.S.A. 2C:2-11. At the hearing on the motion, defendant offered a different version of the events leading to her arrest that was apparently, at least in part, supported by the court's review of the officers' body-cam recordings of defendant's arrest.[1] The court also considered an unsworn letter from the

---

[1] The body-worn recordings were not admitted in evidence or marked as exhibits at the hearing on defendant's motion and are not part of the record on appeal.

plaintiff, dated more than two weeks after the July 2, 2022 incident, in which he stated: defendant is the "love of [his] life"; he does "not feel [defendant] is a threat to [his] safety"; he felt "terrible about getting the courts involved"; he had been "over-emotional and vindictive" when making the calls to the police that led to defendant's arrest; and he requested the charges against defendant "be dropped."

Defendant's counsel argued the charges against defendant should be dismissed as de minimis under N.J.S.A. 2C:2-11 because the plaintiff had requested dismissal, the plaintiff admitted to calling the police in a vindictive manner, and the officers' body-cam recordings showed defendant's refusal to follow the police directives to exit the vehicle and cooperate while being handcuffed was based on her concern about what would happen to the small dog she had with her at the time.[2] Counsel also argued there was no evidence

---

We summarize the court's findings concerning what was depicted on the recordings based on its review of them. We note that in its brief on appeal, the State does not dispute the court's findings.

[2] In its decision on defendant's motion, the court found that during the police interaction with defendant in the parking lot, defendant said she went to the residence and "that her cousin got her small dog, gave it to her, and she was on her way home," when the police intervened to place her under arrest. The record does not reveal the location from which the cousin purportedly obtained the dog, but the court found the residence at issue was "shared" by plaintiff and

defendant entered the plaintiff's residence in violation of the TRO and the TRO did not prevent defendant from "getting her car in the parking lot" of the plaintiff's apartment building. Counsel further asserted defendant may have acted "inappropriately" during her interactions with the police, but there was insufficient evidence she committed either of the charged offenses.

Relying on the body-cam recordings, the State argued defendant clearly resisted arrest, telling the officers, "I am not going to the police station" and making numerous requests that the officers "shoot" her as they attempted to place her under arrest both before and after the dog was taken from her. The State further noted the complaint-warrant's narrative and the officers' reports explained that the plaintiff had stated defendant made "more than a dozen calls" to him following entry of the TRO, and the court was bound "to accept the conduct" as alleged by the State in determining defendant's dismissal motion under N.J.S.A. 2C:2-11.

---

defendant. The record does not indicate whether the officers observed the alleged cousin at or near the residence during the short time that elapsed from the issuance of the TRO at 3:04 a.m. and the time of defendant's arrest or how the cousin obtained the dog from the residence or gained entry into the residence to do so. We note, however, the TRO barred defendant from retrieving personal property from the residence without a police escort.

The court granted defendant's motion in a decision from the bench. The court found defendant had been served with the TRO, which barred her from returning to the residence she "shared" with the plaintiff. The court further found the officers returned to the residence twice in response to reports made by the plaintiff that defendant was at, and then in, the residence. The court explained the officers saw defendant in the "parking garage of the residence," and defendant denied she had been in the residence, but stated she went there and "her cousin got her small dog, and gave it to her."

The court further found the officers directed defendant to "get out of the car," but [s]he objected saying she "didn't know what to do with the dog." According to the court, the officers asked defendant to either place the dog on the ground in the garage or leave the dog in the car, but defendant "objected to both of those." The court found the officers then "grabbed defendant" and "took her from the car," and an officer took the dog and handed it to the plaintiff. The court did not make any findings contrary to the State's allegations that defendant flailed her arms and body as a means of resisting the officers' efforts to handcuff her and effectuate an arrest.

The court further rejected the State's allegation that defendant called the plaintiff seventeen times after she had been served with the TRO that barred her

8

from having any contact with him. Although the complaint-warrant and police reports stated the plaintiff had reported that defendant made seventeen calls and texts to him following service of the TRO, the court found there was no support in the record that those calls were made. The court further noted the plaintiff had dismissed the TRO and requested dismissal of the charges against defendant.

The court also explained defendant asserted the "underlying facts . . . suggest no TRO violation or resisting arrest occurred," and defendant's actions in response to the officers' directives were reasonable because she needed time to arrange for the dog's care. The court further found no evidence defendant had entered the plaintiff's residence.

The court determined "the underlying facts" support dismissal of the charges as de minimis infractions under N.J.S.A. 2C:2-11(b) and (c). The court concluded "there is no evidence defendant actually caused or threatened the harm or evil sought to be prevented by the law in defining the offense[s,] and the actions were too trivial to warrant condemnation or conviction." See N.J.S.A. 2C:2-11(b). The court also granted defendant's motion based on a separate finding "the case presents extenuating circumstances that cannot be reasonably regarded as [envisaged] by the Legislature," see N.J.S.A. 2C:2-11(c),

but the court did not identify or make any findings as to the extenuating circumstances on which it relied.

The court entered an order granting defendant's motion and dismissing the charges. The State appealed the court's order as of right. See ibid.

## II.

The determination of a motion to dismiss charges as de minimis under N.J.S.A. 2C:2-11 rests in the assignment judge's discretion. Evans, 340 N.J. Super. at 248. We therefore review the court's order granting defendant's dismissal motion on de minimis grounds for an abuse of discretion. Ibid.

We "may find an abuse of discretion when a decision 'rest[s] on an impermissible basis' or was 'based upon a consideration of irrelevant or inappropriate factors.'" State v. S.N., 231 N.J. 497, 515 (2018) (alteration in original) (quoting State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017)). We "can also discern an abuse of discretion when the trial court fails to take into consideration all relevant factors and when its decision reflects a clear error in judgment." Ibid. (quoting C.W., 449 N.J. Super. at 255). Where a "trial court renders a decision based upon a misconception of the law, that decision is not entitled to any particular deference and consequently will be reviewed de novo." Ibid. (quoting C.W., 449 N.J. Super. at 255).

A-1017-22

N.J.S.A. 2C:2-11 authorizes an assignment judge to dismiss a prosecution on any one of three grounds after considering "the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances." More particularly, the statute allows an assignment judge to dismiss a prosecution based on a determination the defendant's conduct:

> a. Was within a customary license or tolerance, neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
>
> b. Did not actually cause or threaten harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
>
> c. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense. The assignment judge shall not dismiss the prosecution under this section without giving the prosecutor notice and an opportunity to be heard. The prosecutor shall have a right to appeal any such dismissal.
>
> [N.J.S.A. 2C:2-11.]

The statute, with modifications, was modeled after § 2.12 of the Model Penal Code (MPC).[3] State v. Hoffman, 149 N.J. 564, 587 (1997) (citing 1 The

---

[3] MPC § 2.12 provides as follows:

New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, cmt. to § 2C:2-11, at 23 (1971)). "The drafters of the MPC summarized the historical basis for that section as a 'kind of unarticulated authority to mitigate the general provisions of the criminal law to prevent absurd applications.'" Ibid. (emphasis in original) (quoting 2 The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, cmt. to § 2C:2-11, at 74 (1971)). Indeed, the Court has noted there

The Court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense; or

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.

The Court shall not dismiss a prosecution under Subsection (3) of this Section without filing a written statement of its reasons.

is no hesitancy in our jurisprudence "to terminate a potential prosecution when the charge has been trivial or the prosecution would have been absurd." Ibid.

Here, the assignment judge granted defendant's dismissal motion, finding grounds to do so under subsections (b) and (c) of N.J.S.A. 2C:2-11. In making its decision, the court did not apply the correct legal standard. Contrary to the well-established principles governing the disposition of a motion under N.J.S.A. 2C:2-11, the court neither accepted the State's allegations as true nor considered the facts in the light most favorable to the State. Evans, 340 N.J. Super. at 251; Zarrilli, 216 N.J. Super. at 236. Rather, the court accepted defendant's version of the events, viewed the alleged facts supporting defendant's version in a light most favorable to her, and suggested defendant's conduct constituted de minimis infractions because defendant did not commit any infractions at all.

The court found there was no evidence defendant called the plaintiff following her receipt of the TRO, but in the complaint-warrant and affidavit of probable cause, the State alleged the plaintiff reported defendant called him seventeen times following her receipt of the TRO. Similarly, the court did not accept as true that the plaintiff reported to officers he saw defendant at, and in,

13

the residence following her receipt of the TRO.[4]  Moreover, the court did not accept as true the State's evidence defendant defiantly refused to heed to the officers' orders that she exit her vehicle after being informed she was arrested, or that she physically resisted arrest by flailing her arms and body to prevent the officers from placing her in handcuffs.[5]

We conclude the court abused its discretion in granting defendant's motion because it did not apply the correct legal standard in its assessment of the facts pertinent to the determination of a dismissal motion under N.J.S.A. 2C:2-11. See S.N., 231 N.J. at 515.  Based on our de novo review of the record, see ibid., we are also persuaded that application of the correct legal standard to the State's

---

[4]  In support of its decision, the court relied in part on the plaintiff's unsworn letter, written more than two weeks after the incident, in which he expresses regret at calling the police on July 2, 2022.  However, the letter does not contradict the complaint-warrant and police reports detailing his statements to the police on July 2, 2022, that defendant called and texted him seventeen times and entered the residence twice shortly after she was served with the TRO.  That is, although the plaintiff may have regretted calling the police, his letter does not state he falsely informed the police about defendant's calls and texts to him, or her presence at and in the residence, following entry of the TRO.

[5]  The court's bench decision dismissing the resisting arrest charge as a de minimis infraction makes no mention of the State's allegation, which the court was required to accept as true, ibid., that defendant physically resisted being placed in handcuffs before and after the dog was taken from her.

version of the pertinent facts requires reversal of the court's order granting the motion.

As noted, the court granted defendant's motion under subsections (b) and (c) of N.J.S.A. 2C:2-11. Under subsection (b), a court does not determine "whether the defendant is innocent or guilty of the offense[s] charged." Evans, 340 N.J. Super. at 249. Instead, the court must decide whether the conduct charged "'actually cause[d] or threaten[ed] the harm sought to be prevented,' or . . . was . . . 'too trivial to warrant the condemnation of conviction.'" Ibid. (quoting N.J.S.A. 2C:2-11(b)). Again, in making those determinations, "the judge must assume 'that the conduct charged actually occurred.'" Ibid. (quoting State v. Cabana, 315 N.J. Super. 84, 86 (Law Div. 1997), aff'd, 318 N.J. Super. 259 (App. Div. 1999)).

The State charged defendant under N.J.S.A. 2C:29-9(b)(1) with contempt of the TRO entered pursuant to the PDVA. A defendant is guilty of contempt if the defendant "purposely or knowingly violates any provision in an order entered under the provisions of the" PDVA. N.J.S.A. 2C:29-9(b)(1). To establish the elements of the offense, the State must prove beyond a reasonable doubt that: "(1) a restraining order was issued under the [PDVA]; (2) the defendant's violation of the order; (3) that defendant acted purposely or

knowingly; and (4) the conduct that constituted the violation also constituted a crime or disorderly persons offense."[6] State v. Chenique-Puey, 145 N.J. 334, 341-42 (1996).

Under N.J.S.A. 2C:2-11(b), the "harm or evil sought to be prevented" by N.J.S.A. 2C:29-2(b)(2) is the "vindication of the authority of the court . . . [as] court orders must be obeyed." In re Adler, 153 N.J. Super. 496, 501 (App. Div. 1977) (internal quotation marks omitted). "Restraining orders are entered for purposes of shielding a victim who needs protection and who is compelled to seek judicial assistance to obtain that security[.]" State v. Gandhi, 201 N.J. 161, 189 (2010). Issuance of restraining orders under the PDVA "effectuates the notion that the victim of domestic violence is entitled to be left alone. To be left alone is, in essence, the basic protection the law seeks to assure" victims of domestic violence. State v. Hoffman, 149 N.J. 564, 584 (1997)); see also In re Forfeiture of Pers.Weapons and Firearms Identification Card Belonging to F.M., 225 N.J. 487, 509 (2016) (quoting Hoffman, 149 N.J. at 584-85) (explaining domestic violence restraining orders entered pursuant to the PDVA are intended

_____

[6] Where, as here, the conduct constituting the alleged violation of a TRO "would otherwise not constitute a crime," the contempt charge "is treated as a criminal disorderly persons offense." State v. E.J.H., 466 N.J. Super. 32, 37 (App. Div. 2021); see also N.J.S.A. 2C:29-9(b)(2).

to prevent the harm or evil presented by "those who commit acts of domestic violence, [who] may 'have an unhealthy need to control and dominate their partners and frequently do not stop their abusive behavior despite a court order'").

Here, the State's allegations concerning defendant's actions, which we accept as true for purposes of our analysis of the dismissal motion under N.J.S.A. 2C:2-11, caused, and threatened to cause, the harm sought to be prevented under N.J.S.A. 2C:29-2(b)(2), the contempt statute pursuant to which defendant was charged. The plaintiff sought the protections afforded to victims of domestic violence under the PDVA by obtaining the TRO and reported to the police defendant's alleged violations of the TRO—numerous telephone calls to him and returns to the residence—within one hour of service of the TRO and her release from custody on charges she assaulted the plaintiff, who reported to the officers he feared for his life. To be sure, the plaintiff later requested dismissal of the TRO and the disorderly persons offense charges, but his change of heart does not alter the fact that defendant's alleged actions in violating the TRO caused and threatened to cause the harm or evil—violations of a properly issued TRO and of an alleged domestic violence victim's right to be left alone—N.J.S.A. 2C:29-2(b)(2) was intended to prevent.

17

For the same reasons, we reject defendant's claim the contempt prosecution should be dismissed as de minimis because the alleged violation of N.J.S.A. 2C:29-2(b)(2) is "to too trivial to warrant the condemnation of conviction." N.J.S.A. 2C:2-11(b). "[W]hat is most important" in assessing the triviality of a defendant's conduct under N.J.S.A. 2C:2-11(b) "is the risk of harm to society of defendant's conduct." Evans, 340 N.J. Super. at 253 (citing Zarrilli, 216 N.J. Super at 239).

In Evans, we reversed the dismissal of a shoplifting prosecution finding the defendant's theft of a $12.90 hair bow was not trivial under N.J.S.A. 2C:2-11(b) because of the seriousness of the risk of harm to society presented by the offense of shoplifting. Ibid. So too here, we find nothing trivial in defendant's actions in contacting the plaintiff through seventeen phone calls and twice being at the residence in violation of the TRO during early morning hours immediately following her release from custody after being charged with assaulting the plaintiff. Defendant's alleged actions posed a significant risk of harm to society because her actions are precisely those the PDVA is intended to prohibit and

prevent.[7] See, e.g., Hoffman, 149 N.J. at 587-90 (finding defendant violated the contempt statute by "sending . . . two mailings" to the victim); State v. E.J.H., 466 N.J. 32, 39 (App. Div. 2021) (reinstating contempt charge under N.J.S.A. 2C:29-9(b)(1), based on a violation of a restraining order entered under the PDVA, after finding the defendant "was aware of the high probability" the

---

[7] We are aware that in assessing the risk of harm to society posed by a defendant's conduct under N.J.S.A. 2C:2-11(b), the court may consider the following subordinate factors:

> (a) The circumstances surrounding the commission of the offense. . . .
>
> (b) The existence of contraband.
>
> (c) The amount and value of the property involved.
>
> (d) The use or threat of violence.
>
> (e) The use of weapons.
>
> [(Evans, 340 N.J. Super. at 250) (quoting Zarrilli, 216 N.J. Super at 240).]

The court did not consider or assess these factors in its analysis of defendant's motion. In our de novo review of the motion, and for the reasons we explain, we find nothing in the circumstances of the offenses, as alleged by the State, supporting a finding defendant's conduct did not pose a risk of harm to society. Although her conduct did not involve contraband, property, or the use of weapons, defendant's alleged violation of a TRO issued pursuant to the PDVA and physical resistance to the officers' efforts to arrest her support our determination the charged conduct presented a risk of harm to society.

victim would hear comments and observe a gesture directed at her through a security camera).

In sum, for those reasons, we therefore conclude the court abused its discretion by finding defendant was entitled to a dismissal of the prosecution of the contempt charge based on its determination defendant's alleged actions constituted a de minimis infraction under N.J.S.A. 2C:2-11(b).

Defendant is also not entitled to a dismissal of prosecution of the disorderly persons resisting arrest charge under N.J.S.A. 2C:2-11(b). The record does not support the court's conclusory determination that defendant's defiance of the officers' orders to exit her vehicle to be arrested, and flailing of her arms and body to prevent the officers from placing her in handcuffs, did not actually cause or threaten the harm or evil sought to be prevented by N.J.S.A. 2C:29-2(a)(1), the statute pursuant to which defendant was charged with resisting arrest.

N.J.S.A. 2C:29-2(a)(1) provides that a person is guilty of the disorderly persons offense of resisting arrest "if [s]he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." The Supreme Court has explained that "the text, composition, and structure of N.J.S.A. 2C:29-2 reveal an overall legislative purpose to avoid physical confrontation between

20

arrestees, police officers, and the public." State v. Brannon, 178 N.J. 500, 508 (2004).

In enacting N.J.S.A. 2C:29-2, the Legislature eschewed the MPC's "view that mere non-submission should not be an offense, believing an affirmative policy of submission to be appropriate as now seems to be our law." Ibid. (quoting 2 The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, commentary 1 on § 2C:29-2 at 282 (1971). "[A] person has no right to resist arrest by . . . any . . . means, even if the arrest constitutes an unreasonable seizure under the constitution." State v. Crawley, 187 N.J. 440, 453 (2006). Most simply stated, under N.J.S.A. 2C:29-2(a), a person is required to "submit to an arrest, even if illegal." Ibid.

The harm or evil sought to be prevented by N.J.S.A. 2C:29-2(a) is the avoidance of "self-help" by individuals against law enforcement officers' attempts to arrest. Id. at 453-54. The policy underlying the resisting arrest offense is "that in a society governed by laws[,] our courts are the proper forum for challenges to the misuse of official power and for the vindication of rights." Id. at 454. The statute embodies a recognition that "resisting arrest greatly increases the likelihood of physical harm to both the arresting officers and the suspect, as well as innocent bystanders." Ibid.

Defendant's actions in refusing to follow the officers' directives that she exit her vehicle, and her subsequent flailing of her arms and body in response to the officers' efforts to place her in handcuffs, threatened the harm or evil sought to be prevented by N.J.S.A. 2C:29-2. Indeed, defendant did not submit to the officers' orders and physical efforts to place her under arrest. She defied them. And, in doing so, the officers were compelled to physically remove her from the vehicle and physically confront the flailing of her arms and body while they attempted to effectuate a lawful arrest. Those physical interactions, borne from defendant's defiance and actions, are precisely the harm and evil the resisting arrest statute sought to prevent.

Further, defendant's actions were not trivial under N.J.S.A. 2C:2-11(b). Defendant was defiant throughout the incident, first refusing to exit the vehicle and then physically resisting the officers' efforts to place her in handcuffs. That defendant did not use or threaten to use physical force against the officers or create a substantial risk of causing physical injury to the officers or others is pertinent only to a determination of the degree of the offense for which she was charged. See N.J.S.A. 2C:29-2(a)(3)(a) and (b) (defining elements of third-degree resisting arrest). As to the disorderly persons resisting arrest offense with which she was charged under N.J.S.A. 2C:29-2(a)(1), defendant's actions posed

a risk of harm to society—the creation of disorder and physical interactions with the officers—that is not "too trivial to warrant the condemnation of conviction" of the disorderly persons offense. N.J.S.A. 2C:2-11(b); see also Evans, 340 N.J. Super. at 252. Defendant is therefore not entitled to a dismissal of the prosecution for resisting arrest under N.J.S.A. 2C:2-11(b).

The court also erred by dismissing the prosecution of both charges under subsection (c) of N.J.S.A. 2C:2-11 based on its conclusory determination that defendant's conduct presented extenuations such "that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense." The court did not identify any such extenuations as to either charge, defendant does not point to evidence of any, and we find none.

Accepting the State's allegations as true, defendant brazenly violated the TRO by calling the plaintiff seventeen times and entering his residence within minutes of being served with a TRO that expressly prohibited such conduct. There is simply nothing in defendant's alleged conduct, nor the circumstances surrounding it, supporting a reasoned conclusion that defendant's actions are beyond those which the Legislature envisioned in enacting N.J.S.A. 2C:29-2(a)(1). And, in our view, defendant's apparent desire to obtain the return of her dog is simply not an extenuation vaulting her alleged numerous violations of the

23

TRO beyond what the Legislature intended would be prohibited by N.J.S.A. 2C:29-2(a)(1).

The record similarly lacks evidence of any extenuations such that prosecution of defendant for resisting arrest, based on her defiance and physical actions in response to the officers' efforts to place her in custody, is beyond that which the Legislature intended in its enactment of N.J.S.A. 2C:29-9(b)(2). Again, in our view, defendant's concern for her dog was not an extenuating circumstance such that her resistance to the officers' orders and efforts to place her under arrest falls outside what the Legislature, which adopted the statute to make clear arrestees must simply submit to officers' efforts to arrest, intended. In sum, the record is simply bereft of extenuating circumstances supporting dismissal of the prosecution of the charges under N.J.S.A. 2C:2-11(c).

We reject defendant's claim the court correctly granted her motion for dismissal of the prosecution on the charges because she did not commit the offenses charged. As noted, the court's decision accepted defendant's claims and effectively granted the motion based on a finding defendant did not commit the offenses. It was error to do so, and we will not repeat the error by offering an opinion on defendant's guilt of the offenses or by considering defendant's claim we should affirm the order because she did not commit them. Defendant is

24

presumed innocent of the charges until the State satisfies its burden of proving her guilt beyond a reasonable doubt. For purposes of the analysis of the dismissal motion under N.J.S.A. 2C:2-11, however, we must "assume[] the conduct charged actually occurred," Zarrilli, 216 N.J. Super. at 236; Evans, 340 N.J. Super. at 249, and, in doing so, we find no support in the record for a dismissal of the prosecution on either charge.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION