746 A.2d 1063

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
BRIAN A. WORTHY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 14, 2000—Decided March 8, 2000.

Before Judges HAVEY, KEEFE and A.A. RODRIGUEZ.

*Ivelisse Torres*, Public Defender of New Jersey, attorney for appellant (*Robert L. Sloan*, Assistant Deputy Public Defender, of counsel and on the brief).

*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney for respondent (*Teresa A. Blair*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

Defendant was convicted by a jury of third-degree criminal restraint pursuant to *N.J.S.A.* 2C:13–2, which provides in pertinent part that "[a] person commits a crime of the third degree if he knowingly: a. Restrains another unlawfully in circumstances exposing the other to risk of serious bodily injury. . . ." We agree with defendant that the jury instruction given here did not make clear that the requisite mental state of "knowledge" applies to all material elements of the offense, including the risk of serious bodily injury to the victim. We therefore reverse and remand for further proceedings.[1]

The State presented evidence that sixteen-year old K.B., the alleged victim, had been defendant's friend since her childhood. During their long friendship, they communicated daily. They "went for rides" and defendant often took K.B. shopping.

On November 28, 1996, at approximately 11:30 p.m., K.B. and her friend, Wakeen Conover, walked towards Conover's vehicle, which was parked in front of K.B.'s sister's house on James Street in Lakewood. K.B. got into the passenger seat of the vehicle. When defendant suddenly appeared and got into the driver's seat, Conover ran back into the house. K.B. testified that she attempted to jump out of the vehicle, but was restrained by defendant. Defendant then drove the vehicle away at approximately thirty-five to forty miles per hour while K.B.'s feet were scraping along the street.

K.B.'s brother chased defendant in his own vehicle. According to Brown, during the chase his vehicle reached a speed of up to fifty-five miles per hour. He testified that defendant's vehicle

---

[1] The court granted the State's motion to sentence defendant to an extended term pursuant to *N.J.S.A.* 2C:43–7 and *N.J.S.A.* 2C:44–3, and sentenced defendant to a term of eight years, with a three-year period of parole ineligibility. Because we reverse the convictions, we do not address the sentencing issues raised by defendant.

made a "sharp" turn "all the way in the other lane" before coming to a stop.

According to K.B., during the chase she asked to be returned to her sister's home. Defendant responded that he would do so once her brother-in-law, who was also following them, stopped the chase. K.B. testified that defendant proceeded throughout the neighborhood at approximately twenty-five to thirty miles per hour for approximately thirty minutes. Defendant was "calm" and "under control" and insisted that he intended to return K.B. to her sister's home.

Eventually, defendant stopped the vehicle one block behind K.B.'s sister's home. Defendant and K.B. then walked around the neighborhood with defendant holding K.B.'s hand. Her attempts to run away were unsuccessful. They returned to the vehicle, drove by K.B.'s sister's home and noticed that police officers were present. Defendant then parked one block from K.B.'s sister's house and walked away.

K.B. acknowledged that she was testifying because her parents threatened that if she did not, a warrant would be issued for her arrest. She admitted that on the day of the episode she had been with defendant earlier and that defendant had paged her on her beeper. She also acknowledged that after the episode she explained to the police and the prosecutor's office that defendant had not threatened her or forced her "to do anything" while they were in the vehicle.

Defendant testified that on the day of the incident K.B. attempted to page him. She later called him and gave him directions to her sister's house. When defendant arrived at the house, he got into Conover's vehicle with K.B. The vehicle was running and in gear and began to "buck just like a horse" while his left leg was still outside the vehicle. He asked K.B. to get into the car and close the door for her safety. During the "bucking," the vehicle did not exceed seven miles per hour.

While driving through the neighborhood, a relative of defendant told him that the police were looking for him. When he proceeded toward K.B.'s sister's house, K.B. told him not to stop. He therefore parked the vehicle one block from the house, walked away and presented himself to the Lakewood Police Department.

The trial court instructed the jury as follows:

> Now, Mr. Worthy is accused of violating a statute which reads in pertinent part as follows:
>
> A person is guilty of criminal restraint if he knowingly restrains another unlawfully in circumstances exposing the other to the risk of serious bodily injury.
>
> In order for you to find Mr. Worthy guilty of this offense, the State must prove the essential elements of the offense beyond a reasonable doubt, and those essential elements are as follows:
>
> One, the State must prove that Brian Worthy *knowingly restrained* [K.B.];
>
> And, two, that the *restraint was known* by Brian Worthy *to be unlawful;*
>
> And, three, the restraint was under circumstances exposing [K.B.] to the risk of serious bodily injury.
>
> Now, I've used the terms restraint, knowingly, unlawfully, and serious bodily injury.

After defining "knowingly," the court summarized as follows:

> [T]he State must prove the following elements beyond a reasonable doubt:
>
> *One,* that Mr. Worthy *knowingly restrained* [K.B.].
>
> Restraint means to confine, limit, or restrict one's liberty;
>
> *Two,* that the *restraint was known* by Mr. Worthy *to be unlawful.* The term unlawful means it was accomplished by restraint, by force, threat, or deception;
>
> And, *three,* that the restraint was under circumstances exposing [K.B.] to the risk of serious bodily injury.
>
> [Emphasis added.]

At the close of the instruction, defense counsel took issue with the trial court's failure to make clear that the requisite mental state of knowledge applied to all three elements. He argued:

> When you were discussing the element of criminal restraint, you read a charge saying that he has to knowingly restrain, that the restraint was known to be unlawful, and then you talked about whether the restraint was under circumstances that exposed [K.B.] to the risk of serious bodily injury.
>
> It appeared to me that— that the circumstances exposed ... [K.B.] to serious bodily injury wasn't contained in there. It sounded as though knowledge is only

required on two of the three elements, and I think you've got to show that he knowingly did all three.

The court responded:

I don't think that it requires that he knowingly exposed her to serious bodily injury, only that he acted knowingly with respect to the restraint, exposing her to serious bodily injury.

I listened to your summation, but I don't find necessarily that I have to affirmatively charge that he knew he was exposing her to serious bodily injury, only whether he acted unlawfully and restrained her under circumstances. So I have modeled my instructions around the model jury charge and I believe that would encompass what I think the jury should be charged.

During deliberations the jury asked for a recharge on the three elements of criminal restraint. The jury also asked for a recharge on the definition of false imprisonment, *N.J.S.A.* 2C:13–3, which had been charged as a lesser-included offense. The court repeated the elements of criminal restraint as previously given. Defense counsel repeated his objection, arguing that it was his view that the model jury charge followed by the trial court did not make clear that the mental state of "knowledge" applied to all elements of the offense. The court noted the objection and overruled it.

We agree with defendant that the jury instruction was erroneous and a reversal is required. As noted earlier, the criminal restraint statute provides that "[a] person commits a crime of the third degree if he *knowingly:* a. Restrains another unlawfully in circumstances exposing the other to risk of serious bodily injury...." (Emphasis added). Because "knowingly" is part of the introductory sentence of the statute, the Legislature no doubt intended that the "knowing" mental state applies to each of the elements in subparagraph a; that is, he knowingly restrains, he knows the restraint is unlawful, and knows that the restraint is under circumstances exposing the victim to serious bodily injury.

The Legislature's intent is also clear from the legislative history of the statute. According to the Model Penal Code, after which our criminal restraint statute is modeled, criminal restraint was intended to provide an "intermediate offense between kidnapping and false imprisonment." *Model Penal Code* § 212.2 comment 2

(Official Draft and Revised Comments 1980). The offense is distinguished from kidnapping "either by the lack of substantial removal or confinement, as required for the greater offense, or by the absence of any of the specified kidnapping purposes." *Ibid.* It is distinguished from false imprisonment in that criminal restraint requires that the unlawful restraint occur under circumstances creating a risk of serious harm. *Ibid. See also* II *New Jersey Penal Code* § 2C:13–2 comment 1 (Final Report of the New Jersey Criminal Law Revision Comm'n 1971); *State v. Brent,* 137 *N.J.* 107, 121, 644 *A.*2d 583 (1994). The Model Penal Code's formulation is intended to punish "one who is *aware* of the risk" involved. *Model Penal Code, supra,* at § 212.2 comment 2 (emphasis added). Consequently, "[s]ection 212.2 requires proof that the accused acted *knowingly.* Thus [the actor] must have been *aware* that he was restraining his victim, that the restraint was unlawful, *and* that it exposed the victim to physical danger." *Ibid.* (emphasis added). *See also Key v. State,* 463 *A.*2d 633, 641 (Del.1983) (Criminal restraint "requires the defendant to have acted knowingly, and he must do so with respect to all elements of the offense.").

Further, any ambiguity as to whether "knowingly" was intended to apply to each element of the offense is clarified by reference to other provisions of the Criminal Code. *N.J.S.A.* 2C:2–2a provides that "[e]xcept as provided in subsection c.(3) of this section, a person is not guilty of an offense unless he acted purposely, *knowingly,* recklessly or negligently, as the law may require, with respect to *each* material element of the offense." (Emphasis added).

In addition, *N.J.S.A.* 2C:2–2c(1) provides that "[w]hen the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision *shall apply to all the material elements of the offense,* unless a contrary purpose plainly appears." (Emphasis added). Subparagraph 2c(1) was intended to "assist in resolution" of precisely the type of ambiguity

we have here, namely "the statement of a particular culpability requirement in the definition of an offense in such a way that it is unclear whether the requirement applies to all the elements of the offense or only to the element that is immediately introduced." II *New Jersey Penal Code, supra,* at § 2C:2–2 comment 7. Thus,

> [t]he Code proceeds in the view that if a particular kind of culpability has been articulated at all by the Legislature, as sufficient with respect to any element of the offense, the normal probability is that it was designed to apply to all material elements. Hence this construction is required, unless a "contrary purpose plainly appears." When a distinction is intended, as it often is, proper drafting ought to make it clear.
>
> [*Ibid.*]

*See also* Cannel, *New Jersey Criminal Code Annotated,* comment 7 on *N.J.S.A.* 2C:2–2 (2000). This approach is consistent with the established rule of construction providing that courts are "enjoined to construe penal statutes strictly and to construe ambiguous language against the State." *State v. Galloway,* 133 *N.J.* 631, 658–59, 628 *A.*2d 735 (1993). We therefore hold that a jury instruction on criminal restraint must make clear that the mental state of knowledge applies to all material elements of the offense, including the risk of serious bodily injury to the victim.

The State argues that, when the jury charge is read as a whole, there is no question that the jurors were aware that "knowingly" applied to all three elements of the offense. While the culpable state of mind of "knowingly" was not explicitly stated with the third element regarding defendant's exposing the victim to the risk of serious bodily injury, it is evident from the charge as a whole that it was intended to apply to all three elements.

We disagree.

"An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." *State v. Afanador,* 151 *N.J.* 41, 54, 697 *A.*2d 529 (1997); *State v. Martini (Martini I),* 131 *N.J.* 176, 271, 619 *A.*2d 1208 (1993). As the Court stated in *State v. Martin,* 119 *N.J.* 2, 15, 573 *A.*2d 1359 (1990), "A charge is a road map to guide the jury, and without an appropriate charge a jury can take a wrong turn in its deliberations." Therefore, because the need for accuracy is critical, "erroneous instructions on material points are presumed to be reversible error,"

*ibid.*, and are ordinarily considered "poor candidates for rehabilitation under the harmless error philosophy." *State v. Simon,* 79 *N.J.* 191, 206, 398 *A.*2d 861 (1979). *See also State v. Clausell,* 121 *N.J.* 298, 317, 580 *A.*2d 221 (1990) (holding that it was reversible error where trial court, on a charge of aggravated assault, *N.J.S.A.* 2C:12–1b(4), defined "knowing" conduct but "suggested that defendant had to know merely that he was pointing a gun, not that he had to know he was pointing it at or towards a person").

Here, it is significant that during the jury charge the trial court separated the three elements of criminal restraint, stating on two occasions that the State must prove that: (1) defendant "knowingly" restrained the victim; (2) the restraint was "known" by defendant to be unlawful; and (3) the restraint was under circumstances exposing the victim to serious bodily injury. The emphasis on the mental state of "knowing" as to the first two elements and not the third had the clear capacity to persuade the jury that the defendant need not have knowingly exposed K.B. to the risk of serious bodily injury. The risk of confusion is underscored by the fact that the jury, during deliberations, requested a read-back of the elements of the offense.

With a proper instruction the jury could well have found that defendant's conduct constituted a knowing and unlawful restraint, but that he had not knowingly exposed the victim to the risk of serious bodily injury. "A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result." *N.J.S.A.* 2C:2–2b(2). Defendant testified that when he entered the vehicle it was already in gear. It began to "buck just like a horse" while his left leg was still outside the vehicle. He then asked K.B. to "[s]hut the door. You're going to hurt yourself[,]" suggesting concern for her safety because of the erratic nature of the vehicle's movement. According to defendant, at the time the vehicle was "buck[ing]" he was proceeding at approximately six to seven miles per hour and during the ensuing drive he was proceeding at approximately twenty miles per hour before he dropped off K.B. K.B. testified

that attempted to explain to the police that defendant had not threatened her or forced her "to do anything." On these facts, the jury may have concluded defendant was not aware that it "was practically certain" that his conduct exposed K.B. to the risk of serious bodily injury.

Reversed and remanded for a new trial.