# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0611-22

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

W.Z.,[1]

 Defendant-Appellant.

_____

Argued March 11, 2024 – Decided March 26, 2024

Before Judges Mawla and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 21-08-0188.

Alison Gifford, Assistant Deputy Public Defender argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Alison Gifford, of counsel and on the briefs).

Debra Grace Simms, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney

---

[1]  Initials are used, and parties' names are otherwise not used, to protect the victim in this matter concerning a sexual offense.  R. 1:38-3(c)(12).

General, attorney; Debra Grace Simms, of counsel and
on the brief).

PER CURIAM

Defendant W.Z. appeals his October 14, 2022 conviction on two counts of third-degree invasion of privacy, N.J.S.A. 2C:14-9(b)(1). We affirm.

## I.

The relevant facts were adduced at a six-day jury trial. Defendant and the victim began dating in 2001. Their dating relationship ended in 2017, but the two continued to reside in the same residence with their three children—ages eleven, fourteen, and sixteen. Although the victim did not want defendant to reside in the home after their relationship ended, she testified he was permitted to stay because he maintained residency there. Defendant and the victim had separate bedrooms in the residence and, beyond co-parenting their children, otherwise conducted separate lives.

In 2020, defendant purchased a spy camera. The camera was inconspicuously concealed in the form of a wristwatch and was primarily used to ensure the children were completing their homework. Although the victim had never seen the watch, her oldest son had told her it existed.

There are two bathrooms in the residence: one in the victim's bedroom and one in the hallway, which is shared by the entire house. The hallway

bathroom contained a tub, which the victim would regularly use to take baths. It was common for other members of the household to enter to use the bathroom while the victim was bathing. The victim testified she did not object to others entering the bathroom, because she would close the shower curtain.

In November 2020, the victim was assisting her son with homework in her bedroom when she noticed a wristwatch on top of her mantle. After further examining the watch, she realized it was the spy camera. The victim testified she had not noticed the watch earlier, but she knew defendant had entered her bedroom earlier that day. She removed the memory card from the watch and placed it back on the fireplace. She testified neither her nor her children owned a watch resembling the spy camera. The victim further testified defendant later entered her bedroom while she continued assisting their son, and the watch was gone once he exited.

Two days later, the victim viewed the files on the memory card by inserting the memory card into her cell phone. She discovered two videos on the memory card: from November 19 and November 22, both of which showed her exiting the bathtub in the shared bathroom. The November 19 video captured the victim fully nude, and the November 22 video captured her breasts. The victim testified the videos showed defendant turning on the camera, entering

3

the bathroom, setting up the watch camera on the bathroom sink, moving his face in front of it, aiming it at the bathtub, using the toilet, and exiting.

The victim testified she did not give defendant permission to record her. She further testified when he entered the bathroom while she was bathing, she had the curtains drawn, and he did not inform her of the spy camera being placed on the counter nearby. The victim did not notice the camera when she exited the bath on either date.

After discovering the videos, the victim texted defendant. She told him the videos made her feel "sick and violated and not safe in [her] home." Defendant explained he planned to delete the videos and that the recordings were only created to test the camera. Defendant did not deny taking the videos. At trial, defendant did not testify or offer any witnesses.

Defendant was indicted for two counts of third-degree invasion of privacy in violation of N.J.S.A. 2C:14-9(b)(1). The indictment alleged defendant, "knowing he [was] not licensed or privileged to do so, did photograph, film, videotape, record or otherwise reproduce in any manner, the image of another person whose intimate parts are exposed without that person's consent and under circumstances in which a reasonable person would not expect to be observed,"

A-0611-22

by setting up the spy camera in the bathroom and capturing video of the victim fully exposed without her knowledge or consent, in violation of the statute.

A jury trial commenced in July 2022. After the testimony was completed, but before summations, the court held a jury charge conference in open court pursuant to Rule 1:8-7(b). Defendant's attorney had one objection to the jury charge regarding whether the videotape was distributed. Since it was not an element needed to be proven beyond a reasonable doubt by the State, the court sustained his objection and deleted any reference to distribution. Otherwise, counsel agreed to the charge. After the court completed charging the jury, defendant's counsel also had no objection to the charge as read. In addition, there was no objection to the verdict sheet, which for both counts asked the jury to decide whether defendant committed an invasion of privacy "by the defendant specifically setting up a watch camera facing [the victim's] shower, showing her exiting the bath nude on video without her knowledge or consent."

After approximately one hour of deliberation, the jury found defendant guilty of both charges. At sentencing, the court found defendant's prior criminal record disqualified him from the presumption of non-incarceration pursuant to N.J.S.A. 2C:44-1(e); however, even if the presumption did apply, the court was convinced that, having regard to the nature and circumstances of the offense and

5

the history, character, and condition of defendant, imprisonment was necessary for the protection of the public under the criteria set forth in N.J.S.A. 2C:44-1(a). After finding and applying the aggravating and mitigating factors, the court sentenced defendant to two three-year terms of incarceration to run concurrently.

On appeal, defendant raises the following point:

> POINT I:
>
> THE COURT'S FAILURE TO INSTRUCT THE JURY ON THE REQUISITE MENTAL STATE FOR INVASION OF PRIVACY CONSTITUTES REVERSIBLE ERROR.

## II.

Inasmuch as defendant did not object to the jury instruction on the grounds he now raises on appeal as required by Rule 1:7-2, our review is for plain error. R. 2:10-2. The plain error standard requires a determination of: "whether there is 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Dunbrack, 245 N.J. 531, 544 (2021) (quoting State v. Funderberg, 225 N.J. 66, 79 (2016)). "Relief under the plain error rule . . . is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). Even in a criminal case, plain error review "is a 'high bar,' . . .

6

requiring reversal only where the possibility of an injustice is 'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Alessi, 240 N.J. 501, 527 (2020) (citation omitted) (first quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and then quoting State v. Macon, 57 N.J. 325, 336 (1971)). "The 'high standard' used in plain error analysis 'provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct potential error.'" Santamaria, 236 N.J. at 404 (quoting State v. Bueso, 225 N.J. 193, 203 (2016)).

In the context of a jury charge, "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Montalvo, 229 N.J. 300, 321 (2017) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). See also Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 257 (2015); State v. Burns, 192 N.J. 312, 341 (2007); State v. Jordan, 147 N.J. 409, 422 (1997). The charge must be read as a whole, and not just the challenged portion, to determine its overall effect. State v. A.L.A., 251 N.J. 580, 591 (2022).

"[N]ot every improper jury charge warrants reversal and a new trial." Prioleau, 223 N.J. at 257. "The test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)); See also State v. Walker, 322 N.J. Super. 535, 546-53 (App. Div. 1999) (reviewing the types of general and special instructions that should be given in a criminal case). "The error must be evaluated 'in light of the overall strength of the State's case." State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)).

"Accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v. Hackett, 323 N.J. Super. 460, 480 (App. Div. 1999) (quoting State v. Concepcion, 111 N.J. 373, 379 (1988)); see also State v. Anthony, 237 N.J. 213, 243 (2019). "The jury instructions must explain, in comprehensive terms, the relevant law applicable to the facts to be determined by the jury." Ibid. (citing State v. Green, 86 N.J. 281, 287-88 (1981)). "Model jury charges, although helpful, do not always provide appropriate jury instructions for all cases." Ibid. "The deficiency of a model charge may be remedied by 'mold[ing] the instruction in a manner that

explains the law to the jury in the context of the material facts of the case.'" Ibid. (alteration in original) (quoting Concepcion, 111 N.J. at 379). Instructions given in accordance with the model jury charge, or which closely track the model jury charge, are generally not considered erroneous. Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 466 (2000). See State v. Ramirez, 246 N.J. 61, 70 (2021) (finding no plain error where the judge read the model jury charge verbatim, and no objection to the instruction was made at trial).

## III.

Defendant argues his conviction should be reversed because the trial court erroneously limited the mental state of "knowingly," as required for a violation of N.J.S.A. 2C:2-2(c)(1), only to the element of defendant's knowledge he was not licensed or privileged to record the victim's intimate parts. He submits the court's charge to the jury allowed them to find defendant liable without finding that he knowingly recorded the victim. Defendant argues that to avoid an ambiguous statutory interpretation, the trial court was required to apply the stated culpability requirement to every material element of the offense, "unless a contrary purpose plainly appears."

Here, the trial court instructed the jury as follows: "The statute that I will read to you, read together with the indictment, identifies the elements which the

9

State must prove beyond a reasonable doubt to establish the guilt of the defendant on each of the counts in the indictment." The court went on to explain the first count of invasion of privacy by reading the charge together with the indictment, and continuing as follows:

> [Defendant] . . . <u>knowing</u> he is not licensed or privileged to do so, did photograph, film, videotape, record, or otherwise reproduce in any manner, the image of another person whose intimate parts are exposed without that person's consent and under circumstances in which a reasonable person would not expect to be observed. Specifically, by setting up a watch camera facing the victim['s] . . . shower, showing her exiting the bath nude on video without her knowledge or consent, contrary to the provisions of N.J.S.A. 2C:14-9(b)(1), and against the peace of this state, the government and dignity of same.
>
> [Emphasis added.]

The court instructed the jury on the second count of invasion of privacy in the same manner. It then detailed the requisite mental state for a defendant guilty of invasion of privacy in violation of N.J.S.A. 2C:14-9(b):

> The section of our statutes on which counts one and two of the indictment is based provides in pertinent part as follows: A person commits a crime of invasion of privacy if, <u>knowing</u> that he is not licensed or privileged to do so, he photographs, films, videotapes, records, or otherwise reproduces in any manner, the image of another person whose intimate parts are exposed, without that person's consent, and under circumstances

in which a reasonable person would not expect to be observed.

[Emphasis added.]

The court broke down each element, stating:

> To find defendant guilty of these offenses the State must prove beyond a reasonable doubt each of the following elements as to each separate count of the indictment: Element one, the defendant photographed, filmed, videotaped, recorded, or otherwise reproduced in any manner, the image of another person whose intimate parts were exposed, element two, the defendant did so without that person's consent; element three, the defendant did so knowing that he is not licensed or privileged to do so; and element four, the defendant did so under circumstances in which a reasonable person would not expect to be observed.

The trial court then instructed the jury as to the definition of the "knowingly" mental state and the jury's responsibility to determine this mental state based on the nature of the acts and circumstances presented.

As is correctly noted by the parties, there is no model jury charge for invasion of privacy under N.J.S.A. 2C:14-9(b). Considering the absence of such a model jury charge, the trial court read, almost verbatim, the model jury charge for section (a) of the statute but included the key terms applicable to section (b) of the statute. This included an explanation of when a defendant commits the crime of invasion of privacy by taking certain actions while knowing they were

11

not privileged or licensed to do so. The trial court also derived its explanation of the "knowingly" mental state from those discussions on the available model jury charge. The trial court's actions properly adhered to the applicable legal principles discussed above, as it molded the instructions to properly inform the jury of the law as it applied to the facts of this case.

In reading the jury instructions as a whole, there is no indication they were read in a way that the jury would be misled as to the requisite mental state they needed to find guilt beyond a reasonable doubt. Defendant's focus on the trial court only mentioning "knowingly" as it related to the aspect of the charge involving the privilege or license to record another's intimate parts misreads the record.

The trial court began its instructions by prefacing that a person commits the crime of invasion of privacy by undertaking certain acts while knowing they were not privileged or licensed to do so. The court used this phrase to indicate to the jury that all actions taken involving the recording of another person whose intimate parts were exposed without their consent, and beyond what a reasonable person would typically allow, were being performed with the "knowing" mental state. That the trial court declined to continually repeat "knowingly" before each

action within the instruction was not misleading to the jury and does not demonstrate defendant's conviction was an unjust result.

Our courts have addressed the application of a mental state to each element of a crime when charging a jury. For example, we have held in a prosecution involving unlawfully restraining another in circumstances exposing the victim to the risk of serious bodily injury, the required mental state—"knowingly"—applies not only to the restraint but to the fact that it was unlawful and that it exposed the victim to the risk of serious bodily injury. State v. Worthy, 329 N.J. Super. 109, 113-17 (App. Div. 2000).

The trial court's actions in this case differ from Worthy, to which both parties cite. In Worthy, the criminal statute included an introductory sentence, explaining a person has committed the listed offenses where they acted knowingly. Ibid. Immediately following that introductory sentence is a list of crimes for which a person could be found guilty if a jury found the person acted knowingly. Ibid. We held the trial court erred in its instruction because it failed to apply the mental state of "knowledge" to all elements of the offense. Ibid. We further held the trial court's failure to include "knowledge" as to all elements of the offense allowed the jury to find the defendant knowingly acted in violation

13

of some elements of the offense, but not all, as required to reach a conviction of the crime charged.  Id. at 117.

Here, N.J.S.A. 2C:14-9 does not include such an introductory sentence, and so does not impose the same requirement as the statute at issue in Worthy. Therefore, the trial court did not commit an error that would cause an unjust result by reading the statute as written.  The instruction included the "knowing" mental state and then explained all actions a person could take to be found guilty of invasion of privacy.  Further, the trial court's use of the model jury charge for section (a) of the statute, where no model charge exists for section (b), appropriately informed the jury of the charges without misleading them as to when the "knowing" mental state applied.

The mens rea of "knowing" as to each element of the invasion of privacy offense is clear from a combination of the facts, a fair reading of the statute, and considering the jury charge as a whole.  The overwhelming evidence of defendant's guilt presented by the State proved he engaged in knowing conduct violative of the statute.  Thus, the evidence was sufficient for the jury to find defendant acted in violation of each element of the statute.

A-0611-22

To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0611-22